The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome. I'm Bridget Beatty. I'm a circuit judge and my chambers are in Phoenix, Arizona. I'm sitting today with Judge Richard Pius, who's a senior judge with his chambers in Pasadena, California. And Judge Pius and I are both very pleased to be sitting today with Judge Joan Lefkoe, who's a senior district judge, and her chambers are in Chicago, Illinois. So we have one case that's being argued today. The rest of the calendar has been submitted. The first case is In Re Roundup Products Litigation Liability, the Miller Law Firm, versus Napoli firm. And first up for argument is Mr. Frederick. Thank you, Judge Beatty, and may it please the Court, David Frederick for the lead counsel appellants in the Roundup MDL. I'd like to save eight minutes for rebuttal. For half a century, MDL courts have established common benefit holdback orders at the outset of MDL practice to spread the costs of performing the plaintiff's side work among all plaintiff's lawyers who will benefit from that work. This is done at the outset so that all the lawyers know the costs, the risks, and the incentives and obligations of leadership and participation. Early on, appellants moved for such an order, and it was granted with no plaintiff's lawyer objecting, and the only objection made by Monsanto was addressed by the district judge. So Monsanto agreed to the holdback order at the inception of this case. The district court, having entered that, then made an about-face four years later after the plaintiff's leadership had attained spectacular results. And in the process of deciding how fees would be disseminated in the non-MDL cases, there were two categories that are at issue here. One involved those lawyers who do not have any cases in the MDL, but they contracted to obtain MDL work product in exchange for a part of the fees that would be awarded in common benefit. And the second category are those lawyers who had at least a few cases or one case in the MDL, but the bulk of their cases were in State court, and they challenged below whether or not they owed any common benefit holdback with respect to their State court fees. Now, with respect, before I address the jurisdiction issue, I would like to make three quick points just to signal where I would like to go in the argument this morning. First, the Court changed the rules about entitlement to fees after the fact, based on an impression about how those fees ultimately would be calculated. Second, the Court's alternative factual holding that it would not grant fees if it could was an abuse of discretion because it undervalued the massive success of the MDL leadership, and it overrewarded counsel who had done very little to earn their own contingency fees. Third, if affirmed, the district courts about face, and we — this is the only case that we are aware of in the entire history of the MDL, where a court initially entered the right holdback order and then reversed itself with respect to entitlement fees. And if that is affirmed, it will unsettle well-established rules and skew the incentives of the court. Sotomayor, just one further preliminary question along the same lines as your opening part of your argument. I understand that fees have not — that the cases that have settled, no money has been paid out by Monsanto. Is that correct? Well, my understanding is that the money that Monsanto has paid is being held in a qualified settlement fund. So Monsanto has — so the way — So Monsanto has set aside money to pay settlements. And put it in escrow. Put it in escrow. My question was, has any money been released from the escrow to pay settlements? I'm — I don't think the record is clear on this, and standing here, Judge Pius, I respect to any of the cases. Aren't you part of the team that's leading this litigation? Well, I can tell you my firm has not received any funds out of this. But — Why don't you talk to your friends on the, you know — Judge Pius, I'm not trying to evade you. I'm just — I'm curious, because I think it is — I don't believe the fees have been released. Okay. All right. Standing here today, I do not believe that is the case. And if I can just address the jurisdictional issue for a moment, if you have questions about it, we think the collateral order doctrine is very clear on this point. Twenty-two of the 24 forms on the other side agree with us. And that's because there was a conclusive determination of a disputed issue. That was the application. That doesn't mean it qualifies for the collateral order doctrine. That's one of the features of it. That's — The second — the second — that was conclusively determined. So all — let me just start — Look, Judge Chabria initially entered an order. There was no opposition to it. Manzano didn't — nobody contested it. As litigation progressed, he took another look when there was a little more opposition, and he reconsidered his initial position, and he changed his mind. Right? Nothing wrong with that. Well, there is something wrong — No, there's nothing wrong with that. A district judge can always change their mind until there is a final judgment. Where's the final judgment here? With respect to all the non-MDL cases, there is a final judgment. And even under the collateral order doctrine, that issue was conclusively illustrated — decided. Let me just start with the contracting lawyers. I'm sorry, Mr. Frederick. If I may interrupt you. So are you suggesting that all of the cases that are not in the MDL that have been litigated in state court or perhaps haven't been transferred to the MDL have gone to final judgment? Or are you saying that they're final because of the conclusion the district judge reached in this case with respect to fees from those cases? The latter. Because all of those state court cases where the lawyers — let's just start with the contracting lawyers. They don't have any cases in the MDL. They were decided — the judge decided they do not owe any fees in their state court cases to common benefit the Roundup leadership. That is finally decided. That is a final decision that is well and conclusively over. And those lawyers can disperse the money when they get it. They have no incentive to watch or hang around the MDL. There's no functional reviewability. The other side concedes that there's no jurisdiction in this Court to review what happens in state courts in those cases. I guess what causes me some concern is your initial argument was that the district court erred or abused its discretion by altering an earlier judgment, by reaching a different conclusion, changing its mind. But that suggests to me that that means none of these orders are final because the district judge can continue to do that. Here's the difference, Judge Beatty. There's a difference between entitlement to fees, which the original holdback order said there would be. When the judge reversed that, he said there was no entitlement to fees whatsoever. But does that mean he couldn't reverse his position yet again? Correct. Because those lawyers who are not in the MDL are no longer going to be subject to the MDL or this Court's jurisdiction. That decision is functionally unreviewable by any Federal court, and there's no basis they are, you know, they concede basically that there is no way to get from a State court appeal here on the ground that they improperly were subject to the common fee order. So that is well and truly done. The collateral order doctrine is clear that if it's conclusively decided, if it's functionally unreviewable, which this is, and it's separate from the merits. Are you telling us that there will not be any further orders entered in this fee? There will be, but they will not affect the fees that are issued at this appeal. The only fees that will be at issue later are MDL case fees. We're talking about the non-MDL cases. And if I come away from this argument with anything, that's what we're talking about here. Let me ask you this. Let's suppose that you go all the way to the end, come to judge, you know, you're waiting for your money to be dispersed from the fund. And Judge Chabre enters an order, sets the exact amount that you're going to get out of the fund, common benefit fund, and enters, you know, an order. Why can't you appeal that? Because it's not enough, because he doesn't deal with the other non-MDL cases. And argue to us at that point that the orders that preceded that were wrong. Because, number one, the money will have been dispersed by that point if you agree that this is not jurisdictional, because there will be no basis for Judge Chabre anymore to concern himself with the non-MDL cases. That's the problem. All of those lawyers will be gone. I'm sorry, Judge. I'm probably not close enough to the microphone. But as I understand the premise of Judge Pius's question, if at some point in the future these orders are appealed and reversed, and this court concludes that the district judge was in error in concluding that there was no jurisdiction over these non-MDL cases, as you referred to them, you're saying it's not reviewable because the money will be dispersed. But our case law says that that is not something that establishes non-reviewability because the money is dispersed to attorneys, and then the money can be retrieved, essentially. But these are functionally unreviewable because these lawyers are no longer participating in any fashion in the MDL whatsoever. Sure, but the premise of my question is that that is reversed. If this court were to reverse that, because if the district judge is correct that the court didn't have jurisdiction over these attorneys who don't have MDL cases, then he's correct. But if we were to say that's incorrect, then they would be back within the federal court's jurisdiction. But, Your Honor, we're talking about 96,000 cases. We're talking about the lawyers in those cases all around the country. You would be imposing a burden on the entire bar going after Monsanto for these roundup to wait for however many years it takes for the MDL fee part of this to get resolved before the people in the non-MDL where the judge said, I don't think I have power to deal with those. But is that a basis for appellate jurisdiction? I mean, we have the jurisdiction over appeal, not intervention. I mean, just because something might not be as speedy as the attorneys would like, does that mean that we now have jurisdiction and this is now a final order? This is clearly a final order in any normal collateral order doctrine sense. Well, I guess I would push back a little bit on that because attorneys' fees, while separate from the merits, in many instances are not viewed as a final order for purposes of the collateral order doctrine, like interim orders or awards on fees. So what makes this different? The difference between an interim fee and this order is that in an interim fee, the court is awarding partial fees where the parties are remaining part of the case. And at the final fee stage, the district judge can say, you know what, I over-awarded or I under-awarded interim fees, and I can balance that out at the final fee award. Here, this was not a calculation error. The judge said, I don't have power to order fees in the non-MDL cases. So to that extent, there is a zero-dollar order for all non-MDL cases. That is conclusively determined. The judge has no reason to revisit his authority. I have another question for you. So in your opening remarks and in the briefing and whatnot, one of the categories that you referred to are attorneys who indicated they would use the work product from the MDL, and in return they would contribute to the fund, right? Correct. Okay. Now, I gather many of those folks didn't really sign those kind of commitment letters or whatever they were, right? I don't know the exact number. And there were some that did. I'm sorry? And there were some that did. Correct. And Judge Chabria said no to those two as well, if I understand it correctly. Correct. If I understand his order correctly, right? So if they were part of ñ if those agreements were signed, why ñ you know, just taking that category, and later on you come back up to us for whatever reason, given the amount of money that Judge Chabria allows to be taken from the fund, why couldn't you then at that point Why aren't those folks still part of the MDL? Because they're not doing ñ well, so there are two categories here. I want to be very clear. If we can start with the contracting lawyers, they'll be gone. They will have spent the money. There really wasn't a contract then. Sorry? There really wasn't a contract? There is a contract, but the ñ Why didn't you enforce it? Because the contract incorporated an order that the judge vacated. The contract said, subject to the orders of the district judge, there will be a holdback in a percentage to be decided by the judge. The judge said, I don't have authority. I shouldn't have entered that original order on which everybody relied. And so, therefore, the participating ñ the contracting lawyers will not have a way to appeal later a judgment that the judge had no power. And that's why it's really important for you to reach the merits, because it's critical for you to say, judges doing MDLs should issue these common benefit holdback orders because it will have tremendous effects on how MDL practice is conducted. You want to incentivize lawyers to invest their resources, to take risks, to participate and cooperate with lawyers all around the country. Here, the Missouri court adopted an order incorporating all of the MDL work product in part because that was in Monsanto's benefit. But if you accept the premise that the district judge had no power here, you would be the first appellate decision to say that. It would be contrary to a line of Ninth Circuit cases that say you have that power, a judge has that power to do that in an MDL. Putting aside the jurisdictional issues, which I think are really significant here, I don't know how I come out on them yet. I wanted to hear your arguments. But if you get to the merits, how is it that a district court can somehow control what attorneys are doing in state court? I don't really understand that. That's a hard concept for me to accept. Let me try to simplify it by using an example. If a judge in an MDL enters a protective order and says, lawyers who have access to this information may not violate the protective order, if a lawyer in the MDL, in his or her state court case, violates the protective order, the MDL judge can enforce that. And that happened in the Opioids National MDL, where the court issued a protective order regarding Drug Enforcement Administration information and made very clear that that could not be used in any state court case unless the MDL judge approved that. He did it on the basis of authority over the lawyers and over the information, the work product, and he also had jurisdiction over the defendant. And I think that was indisputably correct because in all MDLs, the district judge has that authority to manage her docket in concern with the work product, with the attorneys. And if the attorneys are choosing to trade that work product in exchange for a common benefit fee holdback in another court proceeding, and they do so incorporating an MDL court's order, there's no question that's part of the inherent authority of the district judge to say, I can control that because that is how these types of arrangements are done most effectively. Did we go back to those participation agreements? Are you saying that these claimants are not in, I mean, they're not obligated for fees once this judge's order was entered because they don't have to do a holdback? That's their position, and that's what the judge ordered, that they do not have to do a holdback. Monsanto, when it puts Okay, I understand they don't have to do a holdback, but couldn't your MDL plaintiffs go after them for the fees because of the participation agreement later? This goes to the functional unreviewability point because both jurisdictionally and on the merits, what that hypothesis supposes is that the lead counsel here, which are pretty small firms, are going to have to bring separate actions in state courts all around the country and try to enforce a contract where the judge vacated the order that would assert the authority to enforce the contract. And it's that kind of functional unreviewability problem that gives you appellate jurisdiction under the collateral order doctrine and emphasizes why their approach is going to skew all the incentives. We want lawyers to cooperate with each other. We want to reward the lawyers who invest millions of dollars of their own money, and we don't want to over-reward lawyers who lie in wait, and they bring cases on the basis of television advertisements, and they haven't actually worked up the case, and they are standing to gain all 40 percent of their contingency fee rather than some number less than 40 percent on the basis of whatever the ultimate calculation of the holdback proves to be. But if you say there's no holdback order from the inception, you are skewing any opportunity for there to be true cooperation and incentivizing the right kind of lawyers to lead these kinds of very complicated MDLs. So I want to turn to a different issue. The district judge here noted that he didn't think there were – the parties can't buy contract and create subject matter jurisdiction, and nor could the district court create subject matter jurisdiction if it were not present. And I believe that's beyond dispute. So even with these participation agreements, I think – I guess the way I'm viewing them is that if the lawyers sign those participation agreements, then they are agreeing to subject themselves to personal jurisdiction in the district court. But there still has to be subject matter jurisdictions. Is that correct? Yes, but the jurisdiction is over the work product. The MDL judge has undoubted inherent authority to manage the work product created in his or her docket, and that's what we're talking about here. We're talking about a trade that is court-sanctioned if the original order is upheld, to trade that work product in exchange for a part of fees in a state court case. That's what this is about. And so the MDL court can say, I'm not going to allow any of my work product that's generated in my courtroom to be used in any other proceeding. A judge could make that decision. So it's not the district court's work product? Well, the district court has inherent authority over the work product so that if that work product violated a protective order or violated attorney-client privilege, the court could order sanctions for that. And that happens all the time, Judge Baez. Well, violating a protective order seems different than using the fact that there's work product before a district court as a hook. To me, that's breathtaking. The scope of subject matter jurisdiction there is unlimited. No, Your Honor, it's not. This is something that has been done for 50 years, that the Supreme Court recognized 140 years ago. This is not a breathtaking expansion of jurisdiction. No, I agree with you that these common fund doctrines have been employed and these funds have been established in MDL cases. And I think the timeframe you're referring to really goes back to class  No, it predates them actually, Your Honor. But there's a fair amount of case law from our circuit finding that these common benefit funds can't go beyond the district court into state court or to parties who haven't even filed lawsuits but have settled. I think if you look at those cases carefully, you will conclude that they are readily distinguishable from the issue that we have here. And I'm happy to talk about them. In Vincent, for instance, the court was dealt with a hold back and it was an airplane crash. It affirmed common benefit except for two points. One lawyer was paid on an hourly basis, not contingent, and negotiated separately from the MDL. Court upheld that doesn't need to be held back. The same was for a second lawyer who had negotiated a settlement before the MDL was created. As to everybody else, the court upheld the common benefit order whether they had filed a case or not filed a case. That's Vincent. In Heartland, one lawyer hadn't filed at all, and the other one didn't sue the defendant airlines. He had only sued the United States. And the court, this Court said, as to everybody else, the common benefit applies. Those two outlier exceptions it doesn't. So it's just not correct to characterize the cases as saying this Court has not authorized common benefit to be applied outside the MDL, either for unfiled cases or for State court cases. Those two small exceptions in each of those two cases, I think, well, are well distinguishable. And I would point the Court to the Third Circuit's Avandia case, which very well goes through this issue about how to deal with State court issues. And Judge Furman in the Southern District of New York in the GM Ignition case, who issued three decisions, and I would commend you to study them, because Judge Furman wrestled hard with these questions and concluded that the right way to deal with it was that for the lawyers who had filed contracts, participation agreements, they were undoubtedly voluntarily agreeing to be bound, and that the only issue where the common benefit shouldn't apply was where the lawyers had not used those documents or discovery in the State court case. So there was evidence of no use whatsoever. If the lawyer had used it, he was deemed to have been subjected to the common benefit because he, in fact, had benefited. And Judge Furman very carefully goes through this whole dichotomy about State court versus use and nonuse in a very careful and nuanced way, respectfully much more careful and nuanced than the Court below did, who I think assumed, got off on the wrong foot in thinking that this was beyond the Court's inherent authority and had thought that the Ninth Circuit's common benefit doctrine had been changed by a Supreme Court case. But the other side doesn't even defend the application of that Supreme Court case to altering this Court's jurisprudence. And I would point, Judge Paez, to your decision in the Fischel case about 20 years ago, which goes through these concepts and the Circuit precedent very well and makes clear that in these sort of common benefit situations, it's really important to incentivize the lawyer to avoid unjust enrichment and to avoid over-rewarding the other side. I'd like to save time unless there are other questions. Well, you've exceeded your time at this point, so we'll see how it goes. But I'll probably give you a couple of minutes, not a full eight minutes because we're already at over 25 minutes right now. All right. Ms. Foley? Good morning, Your Honors, and may it please the Court. I'm Kathleen Foley here on behalf of the Napoliapolis, who believe this Court lacks appellate jurisdiction. The whole point of an MDL is to facilitate efficient management of pretrial proceedings. And, in fact, MDL judges, like Judge Chabria, are handpicked by the MDL panel to do just that. Generally, and just like in ordinary cases, case management decisions like holdback orders are left to the MDL judge and are not immediately appealable as of right. That said, case management orders can be brought to the Court of Appeals under certain limited circumstances, where a lower court is egregiously wrong, such as where it directs conduct in cases not before it. Mandamus is available. Interlocutory orders can also be certified for immediate appeal under Section 1292B, something appellants did not ask the MDL Court to do here. Rather than the scalpel of 1292B, my friends asked the Court to wield one of three sledgehammers, opening the door for appellate review as of right for an entire class of orders, something the Supreme Court has said should be done by rulemaking and not Holdback orders like this one don't finally resolve the issue of attorneys' fees in any case, so they lack 1291 finality. They're not immediately reviewable as collateral orders, either, for two independent reasons. First, and again, they do not conclusively resolve the matter of attorneys' fees. And second, there's no substantial public policy interest justifying across-the-board immediate appeal, not least because the money litigants, like appellants, would like to obtain is being held in the interim by attorneys who are officers of the Court and who here, no one has argued, are likely to become insolvent. What's more, to the extent my friends haven't waived reliance on 1292A1 by failing to assert it in their opening brief as a basis for this Court's jurisdiction, Holdback orders are not injunctions, either, both because they don't protect plaintiff's substantive relief and because they're directed to the management of ongoing litigation. So why don't we just jump into the collateral order, Doctor? Of course. That's the one that they most likely have a chance at. Let me ask you this. Of the three factors for collateral order, for an appealable collateral order, one of the key ones is whether the order is ultimately appealable at the end of the litigation. Which order would ultimately, if you take the view that this order that Judge Chabria just entered and that there's more to follow, what would that be that would make it final? When Judge Chabria enters a dollar-specific order on attorney's fees. Okay. Now, at that time, who would benefit from that order? I guess I'm not sure I understand your question. Well, so what is Judge Chabria doing when he enters a final order? Is he saying ex-lawyers get this amount of money? What is he going to do? How is he going to disperse that fund? Well, sure. So he's going to consider the special master's recommendation, which is going to be made on the submissions of the parties, and then he's going to consider that recommendation and the arguments of all which should be dispersed from the common benefit fund. Yes, that's what I'm talking about. To both lead counsel and other counsel who performed common benefit work. Okay. Now, could the referee say, well, you know, look, there are other lawyers who signed these participation agreements who should also be part of this? And so district court, you ought to reconsider your earlier order. Absolutely. Nothing stops the special master from making that recommendation, and nothing stops Judge Chabria from accepting that recommendation or coming to that conclusion on his own. He could well decide that more fees are due to lead counsel than are currently in the common benefit fund, that they're due more than 8% of MDL plaintiff's recoveries, and reverse his decision, as he did between pretrial order 12 and pretrial order 236. Now, is there a class of plaintiff's lawyers out there who didn't sign a participation agreement or not in any way connected to the MDL, but their case is just sitting in state court? Yes. And I believe that initially my friends tried to, they asked for a hold back from all round up cases, regardless of their connection to the MDL or even whether or not they'd been filed. They don't appeal that aspect of Judge Chabria's orders, but there are such cases out there. Okay. Thank you. Your opposition is saying, though, that if you wait to the end, it's too late to collect the fees from the non-MDL plaintiffs. And as a practical matter, it may be too late. How do you respond to that? Well, I don't think they've made any showing or even any argument that's the case here. I mean, both of my friends are concerned about tens of thousands of cases, but neither of them answers the operative question of how many law firms are at issue. And these law firms, like my friends themselves, hold large inventories of cases. And so it's not as if appellants, if after final judgment, it's determined that they are due fees or contribution from non-MDL cases, are going to have to chase down 95,000 law firms. The number is orders of magnitude smaller than that. And I also think it's telling that no one has made any showing or even any argument that any of these law firms is likely to become insolvent between now and the time at which further fees might be due. Okay. This Court has historically found it meaningful, as Judge Beatty mentioned before, that money is to be held in the interim by attorneys who are officers of the Court. My friend has said a lot about the underlying order and an agreement being vacated, but as Judge Paez's question correctly noted, that's a moving target that could always change or be tweaked or be reinstated or vacated by Judge Shabria. And that's exactly why we don't want to get ahead of ourselves in jumping into the merits right now. I think it's also... I'd also like to note that we don't know who, if anyone, is actually aggrieved by Pretrial Order 236, and we won't know until Judge Shabria enters his final order on attorney's fees. If the MDL Court awards $0 in additional fees, as seems somewhat likely, and if this Court upholds that decision on deferential abuse of discretion review, it will have been a waste of this Court's time and resources to jump into and resolve my friend's merits arguments now. And if, on the other hand, the MDL Court makes an award of more than $0 and does not at that point order non-MDL contribution, which it well could, then some attorneys for MDL plaintiffs may want to argue that non-MDL cases should be made to pay in. Those attorneys may think of arguments that lead counsel have not thought of. Lead counsel themselves may be satisfied by the amount of that award and decline to appeal at all. It would be fairest to wait and see who is aggrieved by that final order and allow the aggrieved parties, if any, to make their arguments on appeal in the ordinary course. Could you just clarify one thing for me? Of course. So this, let's say at the end he just leaves the order, it was 8%. So that's on top of the 40% that most firms... That's on top of whatever lead counsel have collected from their own inventories of roundup cases, yes. Unless the Court has any further questions or concerns, I would submit our position on the brief. Thank you. Thank you. Mr. Lampkin. Thank you. Thank you, and may it please the Court. Appellants were appointed to serve as lead counsel for the MDL. They were covered an estimated $2 billion in fees. The District Court nonetheless ordered an 8% holdback on all cases in the MDL to potentially compensate them still more for the work they did in the MDL. But the Court properly declined to impose a holdback on cases outside the MDL to compensate lawyers it appointed to serve as lead counsel in the MDL. That was correct for two independent reasons. First, MDL courts can't exercise authority over parties, settlements, judgments that are outside the MDL, matters that are before other courts, to tax them to compensate the lawyers they appointed to serve in the MDL. And second, the District Court did not abuse its discretion in finding that because the 8% holdback on MDL lawyers would provide ample funds to provide any compensation it chose to give in the end, the holdbacks from non-MDL cases were unwarranted regardless. Well, let me ask you this. How do you deal with the free riders? So, Your Honor, free riders, first, the idea is that when you appoint lead counsel to serve as the lead for the MDL, they are serving for that entire MDL, everybody who is in it. They're not appointed as lead counsel for state court cases that aren't integrated into the MDL. And it's just one of the—so they get compensated for everything they do on behalf of the MDL, and all the other MDL lawyers that are standing back and letting them take the lead contribute, which is what the 8% holdback does here. But they're not appointed as lead counsel for every state court case that's out there. And when you have your own independent lawyer, you're not a free rider. All the counsel who are sitting in state court cases are also working up their cases. They have to do their own settlements. They have to do their own cases. And, in fact, in this case, lead counsel settled their own cases. But they didn't settle all of the cases, and they didn't open the settlement to everybody else. If they had done that, if all the state participants were able to participate in the settlement, there would be an argument that they created a common fund for all those cases and all those lawyers, and perhaps there would be a common fund basis then. But having settled their own cases and left everybody else to fend for themselves to work up their own cases, they really can't claim a common fund entitlement beyond the work that they did for the MDL itself. They're appointed to the MDL. They're being compensated for the work in the MDL. They don't get compensated for what happens in state court cases. No. I'm sorry to interrupt you. As I understand their argument or part of their argument, they assert that they were exceptionally generous with their work product. They posted it online. They made it publicly available. And so the attorneys you're describing who are not in the MDL or processing cases that haven't been filed or maybe in state court had access to the benefit of all that work. I guess my hesitation with that argument is if they chose to make that information publicly available before somebody signs some sort of contract agreement with them to pay for it, I mean these non-MDL lawyers are receiving the benefit of that work. Is it something that should be considered fair or legal or that they don't pay for it? So the key is fair compensation for MDL lead counsel. And Judge Chabria determined that fair compensation for them would be available with just an 8% holdback for MDL only. But even apart from that, all the state courts, virtually everyone that I know of, have their own version of an MDL. Missouri, which has most of the cases, have them. California, which has a lot of the cases, has their own MDL. If lead counsel believes that they benefited those cases and that they are entitled to some payment as a result of the cases, they can go to the state courts and ask them for money. But what they can't do is have the MDL court, which only has jurisdiction over the MDL, reach across and say, you know that settlement in the state court case? I know, court, you said here's the money for the plaintiff, but that can't happen. I think 10% needs to go or 8% or some percentage needs to go to pay my lead counsel for my MDL for the work done in my MDL. That simply exceeds the court power. And that's exactly what happens here. Because if I ask the court to turn to page 401 of the excerpts of record, what it provides, and if you look, there's a paragraph labeled, payment to the fund, paragraph 6. And if you go right to the bottom, it says, no orders of dismissal for any participating case, and the participating case means any case that's subject to the holdback order, shall be filed unless accompanied by a certificate of compliance. So in other words, the parties can't, and state courts can't dismiss their cases  through this qualified fund for the MDL counsel. That type of an injunction, that type of reaching across to the state court case and saying, you guys are effectively forced to continue your case until people get paid, that simply goes too far. It is beyond the court's authority and jurisdiction. And this court and two other courts' appeals have already so held. So for example, I think if you try, if the Hartling case, for example, this court granted mandamus saying that reaching across to get a holdback from the Golub state court action was too far, it was usurpation of power was the term it used. And that was true even though Golub had two cases. There was a state court case against the airlines, and then there was a federal court case that went into the MDL against the United States, a common defendant. So even though the Golub plaintiff there had a case in the MDL, this court held that it was beyond the court's power to reach to the state court case and take a recovery from the state court case, even though that plaintiff had a case in the MDL. If that's true, then the mere fact that a plaintiff has a lawyer who also happens to have a case in the MDL or that a defendant is in common across the MDL can't be enough. It's too thin a reed to reach across and tax the result in a state court case. But what if the lawyer signed the participation agreement? So the participation agreements are distinct in the following sense, and that is that you have a contract among the lawyers. But for a federal court first to have jurisdiction over that, you're going to have to figure out how to make that federal. So that typically, the two cases that have said that you can enforce them have said, well, if it's incorporated by reference into the court's order, it becomes an order of the court and enforceable by the court. I'm not sure that's right. GMO Rice says it's not. It sort of creates kind of a bootstrapping. But even if that were right, in this case, there's nothing in PTO 12 that incorporates by reference the participation agreements. It doesn't have a copy of them attached. And when PTO 12 has an incorporation by reference, it says it expressly. So if you looked at page 402 of the excerpts of the record, it says participating counsel for our allegement for reimbursal, et cetera, et cetera, pursuant to exhibit one of this order, which exhibit is fully incorporated by reference into this order. Second, there's no evidence in the record that Judge Chabria ever saw these participation agreements, and it's hard to say that a participation agreement is incorporated by reference into the order when Judge Chabria never even saw them before they were assigned. And finally, Avandia says, well, look, if in substance your participation agreement is the same as the court's order, and in that case there was an order incorporated into the record and the participation agreements differed immaterially from the order that was incorporated by reference, that's good enough. We'll deem that incorporated by reference as well. But here, the participation agreements are very different from PTO 12. PTO 12, for example, doesn't say anything about liens or security interest in the client's recovery. But the participation agreement, and this is the excerpts of record 187, paragraph 4, gives lead counsel, quote, a lien in any recovery by any client who the signing lawyer signs or represents, in which they represent they have a financial interest. Likewise, PTO obligates Monsanto to deposit holdbacks, but the participation agreement goes further, and it says if that doesn't happen, plaintiff's counsel must immediately deposit or cause to be deposited the assessment of the fund. So it's very hard to convert, even on these facts, that participation agreement into a federal court order, which might be enforceable in the federal court. And finally, the district court didn't abuse its discretion in finding that for the 10 to 15 firms that actually signed these participation agreements, the proper holdback amount was zero. And that's based on the circumstances of the case, because the court, in its PTO 12, didn't set a holdback amount. It said the amount will be determined at a later date based on the specific circumstances of this case. Well, the specific circumstances of this case turned out to be that, one, lead counsel was fully compensated from just their own recovery and from any money they got out of the MDL parties alone. And the court determined that there was no benefit to the people who signed the participation agreements for having signed it. And that was well established by the record. For example, most of the MDL product, and this is except for Record 31, was available to any member of the public for free. It would not be appropriate to take money from anyone's recovery based on access to that information. Any confidential work product had dubious value. The court made that finding on page 31 of the excerpt. And then lead counsel themselves did not attribute any significance to these participation agreements. They just handed out work product, whether you had a participation agreement or not. And it's very hard to say that the court were going to attribute a huge amount of value to these participation agreements when the lead counsel themselves really didn't attribute any particular meaning to them. And I think that actually turns around to, I know my opposing counsel stresses reliance interest on the court's order. I think that turns the reliance interest. How much reliance was there on these participation agreements? Exactly zero, because they didn't insist on them. How much reliance could there be? Well, first, one key point is, why did the district court go back and reconsider the order? And the district court went back and reconsidered because plaintiffs sought, lead counsel sought to reopen it. On page 9 of the excerpt of Record, the judge explains that what prompted him to go back was rather than limiting themselves to people who signed participation agreements or people who had a lawyer that was in state court but also happened to have an MDL case, they went back and asked to tax every case against Monsanto where there was a recovery, way beyond. And the court said, gee, that's not in the order. And you're breathtaking, you use the term breathtaking, that breathtaking expansion leads me to go back and rethink this. Having asked themselves to reopen PTO 12, they can't turn around and say, gee, we had a reliance interest and we thought this was set in stone. The reopening was granted, but it just didn't go the way they wanted. In addition, you can't really have a reliance interest on it when it doesn't actually set the amount. Petitioners aren't, excuse me, appellants aren't injured if there's an 8% holdback on a lower number of contributors versus a smaller holdback on a larger number. So long as they're getting adequate compensation, so long as they're appropriately compensated, there's no real injury. And here the district court made finding after finding after finding that they would receive adequate compensation based on the 8% holdback from the MDL plaintiffs alone. If that turns out to be mistaken in the end, there could be a remedy, but this was never even really challenged that this would not be a sufficient compensation. Let me ask you, I just want to... This is more like I'm trying to understand the mechanics of this. The amount of money that Monsanto set aside to settle all these cases, are they holding those funds or are those funds, the council suggested, are in a separate escrow or...? So Monsanto has announced that it has allocated a certain amount of money, I think, in the range of $10 billion to settle all these cases, but that's not a settlement amount for all the plaintiffs. That's just what they internally said they're going to set out. Having announced that, and having a large portion of that already going to lead council's plaintiffs, it's very hard for the other people to achieve similar results because a very much smaller amount is left for a very much larger number of plaintiffs. But that's not actually a number where there's a confined fund. You can say, oh, here's a certain amount of money, or making claims again that's money. That's just Monsanto's assertion of how much they have decided to make available for it. They didn't actually settle any of those other cases, and many of them remain unsettled. Probably nearly 100,000 remain unsettled. But did they actually hold back any money and put it in a fund? Is there a Common Benefit Fund? Is there a fund that exists, and a certain amount of money is in that fund? Yeah, so I don't know if there's any money in a Common Benefit Fund based on the holdback from NDL claimants already. My suspicion is that the answer is no, that it's probably any money is sitting in a Qualified Settlement Fund waiting to be distributed between the claimants and the lawyers. But I don't have that actual information. But I do know that I don't think... I don't think claimants have actually received money. I think the money is still sitting in the QSF, the Qualified Settlement Fund. Is it Judge Feinberg? Pardon? Mr. Feinberg? Yeah, it was Mr. Feinberg, yes, who negotiated the settlement between League Council's plaintiffs and Monsanto, yes. I see. And the individual cases, I mean, each individual case, somebody has to sit down and figure out how much a plaintiff is going to get, right? I would assume that's the case. I don't know exactly how that worked. But that merely settled 32,000 of the more than 100,000 cases. It settled only the League Council's cases. All the other cases either are being settled on their own or remain pending or are going to be worked up through trial. And having only settled their own cases, that claim to a common benefit based on a common fund kind of goes away. The court has established... The courts have recognized common funds, recoveries in sort of two circumstances. One where you have sort of an identifiable fund of money or set of property. So that would be like Clowack, where there are 14 pieces of property, or Sprigg, where there is the proceeds of bonds on which there was a lien placed. So you could identify that sort of pot of money or the pot of receipts. The other context is like Vincent, where there was a recovery for the people before the court. And all the money that was coming into the cases before the court, the consolidated cases, was treated, even though it might be flowing in over time, that was all treated as a common fund. What the courts haven't done is said, well, the common fund will be everything that goes into the court, identifiable money, and everything that comes in from separate state court cases where we have some tenuous relationship to the MDL. For example, there's a lawyer that overlaps. We'll call that a common fund too. Or where they signed a participation agreement, we'll call that a common fund. Courts just have never gone that far. And I think plaintiffs are pushing the envelope what constitutes, excuse me, lead counsel and what constitutes a common fund when they try and extend it to any proceed from any state court action just because there's a counsel that happens to be overlapping or in common, a counsel that overlaps between the two. That simply is too thin a read. And court after court that's considered it has rejected it. For example, the Eighth Circuit in GMO Rice said expressly, having a common defendant or common counsel just is not enough to establish the court's authority over separate state court actions. The Fourth Circuit in Shoah-Denko held that it was not a sufficient basis that you had a common defendant. Paragraph 4 of the settlement of the holdback agreement there had the defendant, Shoah-Denko, setting aside the money, and the court said that's simply not enough of a basis to go back and hold back money against state court plaintiffs. And this court, frankly, in Hartland foreclosed it here, granting mandamus saying, look, the separate state court action cannot be something that a federal court reaches into to compensate MDL lawyers because that action isn't before the federal court. There's just no basis for doing that. And that was true even though the Golub plaintiff who recovered there had an action in state court and a federal court action that was in the MDL. So finally, if I could turn back one last thing in terms of those who had signed these agreements. The court made specific findings that any confidential work product that wasn't put up on the website had dubious value, and it says it's doubtful that access to a work product is what truly advanced the ball for those attorneys and their clients. There's little reason to believe, at least on this record, that access to confidential work product increased anyone's settlement value. Now, I will concede that there is something that really did move the ball here, and that is that Monsanto lost three trials. Two of them were state court trials, so they weren't even MDLs. But they did lose an MDL, and that did advance the ball.  that every time you do something that advances the world, the benefit is some sort of annuity, some sort of tax on the ultimate recovery. The folks who won Basic versus Levinson, they don't get a tax on every time a securities class action succeeds on the presumption of reliance on the market. They just don't. The person who won Bivens versus six unknown unnamed agents, they don't get a recovery every time a civil rights plaintiff recovers money from the federal government. It's just a feature of the law, of precedent, of how things work out, that sometimes someone goes first and establishes precedent or results that benefits other people. In the MDL context, where the court has appointed lead counsel for an MDL, the other MDL lawyers who are also before that court can be required to contribute to support that. But you just can't reach across to state court actions and say, state court, you must set aside some of that money that you were going to give to the plaintiff, and you must now give it to the lawyers that I appointed. And I think, I know counsel mentioned protective orders as an example of where courts do reach across and attempt to regulate what's happening in other courts, but I think the contrast with protective orders makes it especially clear that what's being done here or what they want to have done here is impermissible. And when a court sets a protective order saying I will allow you to have information that I have control over, but I'm going to encumber that information. I'm going to limit how you use it. You may not use it in other proceedings. But this is the exact opposite. The court, the request to hold back order would have a federal court limit something that state courts would like to do. The state court would like to settle. It would like to give out a recovery. But the federal court's ruling, and this is page 401 of the Exceptional Record, says no, you can't do that. You must take some of that money that you were going to give to your plaintiff, and you must give it to my, the lawyers I appointed for the MDL. So rather than limiting putting, encumbering something it's giving out, it is attempting to encumber what the state court would be recovering. That just goes too far. And it goes too far especially here when you're telling that claimants in state courts can't get their recoveries, they can't dismiss their cases until they pay money, some sort of tribute to the MDL lead counsel. If the court has no further questions, I thank the court for its time. Yes, the judgment be affirmed. Thank you. All right. Mr. Frederick, I'm feeling very generous this morning, so I will give you five minutes for your rebuttal. Thank you, Judge Beatty. And I'm going to try to answer a number of questions that the court posed. Ms. Foley, though, conceded that a dollar specific order is appealable. That's exactly what the court did below. He ordered zero dollars for non-MDL cases. It is functionally unreviewable because all of those lawyers have no other connection to the MDL. If we can't, if they cannot appeal now that decision, the money will disperse, the lawyers are not connected, their functional equivalent is that we have to go around the country to chase after lawyers. Judge Paez, you asked about reconsidering. But Judge Chabria is the ultimate decider of whether he thinks there's power and whether Special Master Feinberg says, you know what, actually, you should reconsider. There's no basis, there are no cases, it's complete speculation. But the whole idea about whether or not something is reviewable now is the whole basis of the collateral order doctrine. It's not based on some speculation that a Special Master might feel that there are more cases to be included within a common benefit distribution when the Special Master's sole purpose is to decide in the MDL cases should there be common benefit awards. Judge Beatty, you asked about the sharing of work product. That was all done after the original order was done. And this, the lawyers relied on precedent and the order in opening up the files and in treating this as an open matter. But that happened before even in the original order, the district court did not set a percentage, right? Correct. But what the judge did say was you will be entitled to something. I'm going to set the percentage later. If you share the work product, you will get a common benefit from these non-MDL cases. And the judge relied on that consistent with long-standing precedent in the MDL courts. The Evandia court noted that the contracts, whether the contracts incorporate the order or the order incorporates the contracts, it's functionally the same thing as far as what the lawyers are concerned. And what I think, Judge Beatty, I really want to try to drive home is that it's really important for this court to say judges can't reverse themselves after the lawyers have reasonably relied on their earlier order. If there was a basis to say I could reconsider this decision, the lawyers would have acted completely differently. They wouldn't have opened up their files. They wouldn't have put them... I'm sorry, but what you're asking us to do is establish law that any time before a district judge enters a final order, if they enter some other order, they can't change it. No, what I'm saying is that there is what you should say is that at the outset, the courts have inherent authority to enter a common benefit order. And if they do and the lawyers act in reliance on that, you can't pull that away from them later. You can say 8 percent isn't the right number. It could be 7 percent. It could be 10 percent if there was other action. But you can't just say no power whatsoever. Because the lawyers here acted in good faith. They achieved spectacular results. Their clients are only heroes. You're not suggesting that you wouldn't have pursued the case vigorously if he had simply denied at the outset, you know, I'm not going to enter this order now at the outset of this MDL. Let's wait a while, see how things go. You're not suggesting that you wouldn't have litigated as vigorously as you had once that order was entered. I think that there are ways to say, Judge Paez, that the Miller firm here, it was a 10-employer firm, had deployed all of its lawyers in two bellwether cases at the same time. They could not do any other practice. And they were not assured that they would even recover the $15 million out of pocket that they expended. But that's why the Common Benefit Fund is such an important concept because they knew if they got a great result, that opportunity to share in Common Benefit monies would be available to them. Monsanto was the one who got offers, and this is at ER 180, but the lead counsel attempted to get Monsanto to agree to resolve with all of the others. In terms of the incentives created, we want to incentivize lead counsel to eliminate roadblocks to the creation of work product because that makes the entire process move more seamlessly. If they created roadblocks by saying their work product wasn't available, Monsanto would be bringing motions. The other plaintiffs counsel would be bringing motions. That's just simply more work for district courts to do. Instead, what the appellees are arguing is that having done nothing in the Common Benefit, and notably, Mr. Lamkin didn't point to a single piece to suggest that his clients had done anything for the Common Benefit, they get billions of dollars. If you look at the record on page 232, you'll see a long list of all the materials that were made available by the lead counsel. Ultimately, I think the question before the court is are the free riders going to get the benefit for having not contributed to the Common Benefit, or does the precedent supporting Common Benefit enable the lead counsel who created it to share somewhat in the proceeds that they created? Thank you. Thank you. The case is taken under submission and we will be in recess until tomorrow morning. All rise. Thank you.
judges: PAEZ, BADE, Lefkow